**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **BOBBY ALLAN GREEN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-18-0025-R** |
| | ) | |
| **DENNIS LAYDEN, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER

Before this Court are the Motions to Dismiss of Defendants Dennis Layden, Adam Roll, Matthew Strayer, and William Sharpe (collectively, "Defendants"), Docs. 7, 13. Plaintiff Bobby Allan Green filed this suit on January 9, 2018. *See* Doc. 1. Plaintiff failed to timely serve Defendants. On June 19, 2018, this Court ordered Plaintiff to show cause by June 29, 2018, why service had not been timely made. *See* Order, Doc. 4. Plaintiff, in lieu of showing cause, requested issuance of summonses on June 26, 2018. *See* Doc. 5. The summonses were returned executed as to Defendants. *See* Doc. 8–9, 11–12. Defendants Layden and Roll moved to dismiss this suit on August 1, 2018, Doc. 7, and Defendants Strayer and Sharpe moved to dismiss on September 10, 2018. Doc. 13. Though Plaintiff has not responded to either motion, the Court's duty to consider these motions persists. *See Issa v. Comp USA*, 354 F.3d 1174, 1177–78 (10th Cir. 2003) ("A district court may not grant a motion to dismiss for failure to state a claim merely because a party failed to file a response. . . . Consequently, even if a plaintiff does not file a response to a motion to dismiss . . ., the district court must still examine the allegations in the plaintiff's complaint

and determine whether the plaintiff has stated a claim upon which relief can be granted." (internal quotation marks, citations, and brackets omitted)).

While Defendants move to dismiss for untimely service under Fed. R. Civ. P. 4(m) and Fed. R. Civ. P. 12(b)(5), they also move to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. As all Defendants have ultimately received service, though untimely, the Court bypasses Defendants' procedural arguments and DISMISSES without prejudice Plaintiff's complaint under Rule 12(b)(6).

## I.  **Background**

In considering a motion to dismiss, the Court treats Plaintiff's well-pleaded facts as true and views them in the light most favorable to Plaintiff. *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). Moreover, as Plaintiff is *pro se*, the Court "liberally construe[s] [his] pleadings." *Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016). Plaintiff brings numerous claims against Defendants under 42 U.S.C. § 1983 stemming from two incidents in January 2016. The Court will consider each alleged incident in turn.[1]

---

[1] As a preliminary matter, the Court takes notice of the state judicial materials attached as exhibits to Defendants' motions and to which Plaintiff cites throughout his complaint. *See* Docs. 1, 7-1, 13-1–13-3. "In evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the complaint itself, but also attached exhibits and documents incorporated into the complaint by reference." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (citations omitted). As well, "facts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment. This allows the court to take judicial notice of its own files and records, as well as facts which are a matter of public record." *Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006); *see also Hodgson v. Farmington City*, 675 F. App'x 838, 841 (10th Cir. 2017) (noting that the district court may consider "another court's publicly filed records 'concerning matters that bear directly upon the disposition of the case at hand'" when ruling on a motion to dismiss (quoting *United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007))).

**(A)** *January 9–10, 2016*

According to the complaint, Plaintiff pulled into a Lowe's Home Improvement parking lot in Oklahoma City, Oklahoma, at around 10:40 p.m. on January 9, 2016, because "[he] was getting t[ir]ed behind the wheel." Doc. 1, at 2. Plaintiff "passed out" in the parking lot; despite the night being "so cold," Plaintiff turned off his vehicle because the windows were rolled up and "[he] had [his] trench coat on." *Id*. Around 3:40 a.m. the next morning (January 10, 2016), Dennis Layden and Adam Roll, Oklahoma City police officers, knocked on Plaintiff's car window ("for no reason," says Plaintiff) and "shout[ed] at [him]." *Id*. Plaintiff's narrative deteriorates after these allegations, but, liberally construing the complaint, Plaintiff alleges that Officers Layden and Roll forced him out of his vehicle—presumably through their knocking and shouting. *Id*. at 2–3. The officers searched Plaintiff's vehicle without consent—Plaintiff surmises that this search was "illegal," a legal conclusion the Court may disregard—and, at some point, observed a "clear baggie containing marijuana" in plain view. *Id*.[2]

Plaintiff then describes a colloquy in a state court preliminary hearing on August 18, 2016. *Id*. at 3.[3] At this hearing, Officers Layden and Roll testified that they either saw or concluded that Plaintiff was smoking marijuana in his car. *Id*. They based this conclusion on Plaintiff's green-tinted tongue and raised taste buds, which indicated to the officers, in light of their policing experience, that Plaintiff had recently been smoking. *Id*. In answering

---

[2] Plaintiff notes that the probable cause affidavit in his state court prosecution includes the officers' assertion that they saw such a marijuana-filled bag, and he does not contest the factual accuracy of this assertion. Doc. 1, at 2–3.

[3] According to Defendants' attached exhibit, this preliminary hearing took place on August 22, 2016, not August 18, 2016. *See* Doc. 7-1, at 4.

questions from Plaintiff's attorney, the officers testified that the car did not smell of marijuana and that they observed no drug paraphernalia inside the car. *Id*. Following the officers' testimony, Plaintiff was bound over for trial, but the state dismissed the charges. *Id*.

Plaintiff alleges the following counts against Officers Layden and Roll under Section 1983: the officers (1) unlawfully seized Plaintiff and searched his car in violation of his Fourth Amendment rights; (2) falsely imprisoned Plaintiff in violation of his Fourth and Fourteenth Amendment rights; and (3) subjected Plaintiff to excessive force in violation of his Fourth and Fourteenth Amendment rights.

**(B) *January 30, 2016***

At around 2:45 a.m., Plaintiff was driving in Oklahoma City, Oklahoma, when he was pulled over by police. *Id*. Plaintiff was not ticketed for a traffic violation, but the police did administer a field sobriety test, which Plaintiff passed. *Id*. Plaintiff then declined a blood test and breathalyzer. *Id*. at 3–4. Again, Plaintiff's narrative becomes less clear, but somehow Plaintiff eventually found himself in the back of a police car. *Id*. at 4. At some point after this, Officer Matthew Strayer, employed by the Oklahoma County Sheriff's Department, arrived, placed Plaintiff in the back of his car, and transported him to Oklahoma County jail. *Id*. Officer Strayer later testified at Plaintiff's preliminary hearing as to what the officers at the scene had told him. *Id*. Plaintiff was bound over for trial, but, as with the first incident, the state dismissed the charges.[4]

---

[4] While still taking as true Plaintiff's well-pled factual content, the Court merely notes the contrasting and colorful account of January 30, 2016, provided by Officers Strayer and Sharpe in their motion to dismiss:

Plaintiff alleges the following counts against Officers Strayer and Sharpe under Section 1983: the officers (1) subjected Plaintiff to excessive force in violation of his

---

At approximately 3:25 a.m., on January 30, 2016, Oklahoma County Sheriff Deputy Matthew Strayer and Deputy William Sharpe responded to a welfare check concerning a man who was passed out in his vehicle in the 4400 block of NE 36th Street, in Forrest Park, Oklahoma. Co-Defendant, Ryan Robertson, a Nicoma Park Police Officer, was first on the scene and observed Mr. Green standing on the south curb line of NE 36th Street, attempting to urinate. Mr. Green informed Officer Robertson that he had been driving downtown, but needed to relieve himself. Officer Robertson placed Mr. Green in the back of his patrol car until Deputy Strayer and Deputy Sharpe arrived.

When Deputy Strayer and Deputy Sharpe arrived, they observed Mr. Green's vehicle parked sideways in the center of the road. The vehicle's headlights were on, and the vehicle was still running. Both Deputy Strayer and Deputy Sharpe spoke with Mr. Green. Mr. Green admitted that the vehicle was his and both deputies observed a strong odor of alcohol on his breath. Mr. Green was very agitated and confused about his location and direction of travel. At first, Mr. Green told the deputies that he was going downtown, but a few seconds later he indicated that he was driving home from a downtown bar and that he stopped and parked his vehicle in the middle of the road because he needed to urinate.

Deputy Strayer and Deputy Sharpe noticed that Mr. Green's eyes were bloodshot and watery. Deputy Strayer further observed that Mr. Green was unsteady on his feet. Therefore, Deputy Strayer had Mr. Green lean against the side of the patrol car. Deputy Strayer asked Mr. Green if he could check his eyes because he had been drinking. Mr. Green agreed. Therefore, Deputy Strayer administered the horizontal gaze nystagmus test, which is one of the standardized field sobriety tests law enforcement administers to check for impairment. Mr. Green's results were poor. Deputy Strayer offered Mr. Green the opportunity to undergo the other two standardized tests, but Mr. Green belligerently refused, stating "I'm not taking your damn test, I have to pee."

Deputy Sharpe examined Mr. Green's vehicle, which was still running, and determined that the vehicle was fully operational and capable of being driven.

Based upon Deputy Strayer's observation and investigation, he determined that Mr. Green was the driver of the vehicle and that Mr. Green was too intoxicated to safely operate a motor vehicle. Therefore, Deputy Strayer arrested Mr. Green, placed Mr. Green in the back of his patrol car, and transported Mr. Green to the Oklahoma County Jail where he was booked into jail on charges of Driving without a License and Operating a Motor Vehicle While under the Influence of Alcohol. Deputy Strayer reviewed Plaintiff's criminal history, and discovered that Plaintiff had a previous charge for driving under the influence and for actual physical control on November 2, 2006. Therefore, Deputy Strayer added the charge of Driving under the Influence and Actual Physical Control—Second Offense within 10 Years. Mr. Green was released to the jail staff without further incident.

A preliminary hearing was held on these charges on November 21, 2016. Mr. Green was represented by counsel, who questioned Deputy Strayer about the charges. At the conclusion of the hearing, Mr. Green was bound over for trial. However, on February 27, 2017, the charges were subsequently dismissed.

Doc. 13, at 2–4 (citing Doc. 13-1–13-2).

Fourth and Fourteenth Amendment rights and (2) falsely imprisoned Plaintiff in violation of his Fourth and Fourteenth Amendment rights.

## II. <u>Legal Standards</u>

A plaintiff's complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).[5] Operationalizing the Rule, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard "is 'a middle ground between heightened fact pleading . . . and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)). That is, the plaintiff's complaint "need only give the defendant fair notice of what the claim is and the grounds upon which it rests." *Id*. at 1192 (internal quotation marks and citations omitted). While assessing plausibility is "a context-specific task . . . requir[ing] . . . court[s] to draw on [their] judicial experience and common sense," *Iqbal*, 556 U.S. at 679, complaints "'plead[ing] factual content that allows the court to . . . reasonabl[y] infer[] that the defendant is liable for the misconduct alleged'" are facially plausible. *See S.E.C. v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). Where, as here, a plaintiff brings claims under Section 1983, "it is particularly important . . . that the

---

[5] A legally-sufficient complaint must also include "a short and plain statement of the grounds for the court's jurisdiction" and "a demand for the relief sought." *Id*.

complaint make clear exactly *who* is alleged to have done *what* to *whom*," as "state actors may only be held liable under § 1983 for their own acts, not the acts of third parties." *Robbins*, 519 F.3d at 1250–51.

In considering a Rule 12 motion to dismiss, the Court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013). And though the Court liberally construes Plaintiff's *pro se* complaint, it "will not construct arguments or theories for the plaintiff in the absence of any discussion of those issues." *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991); *see also Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. . . . At the same time, we do not believe it is the proper function of the district court to assume the role of advocate for the pro se litigant." (citations omitted)); *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989) ("Although we must liberally construe plaintiff's factual allegations, we will not supply additional facts, nor will we construct a legal theory for plaintiff that assumes facts that have not been pleaded." (citations omitted)).

## III. __Discussion__

Plaintiff brings his claims under 42 U.S.C. § 1983.[6] "Section 1983 provides that a person acting under color of state law who 'subjects, or causes to be subjected, any citizen

---

[6] Via Section 1983, Plaintiff purports to bring many of his claims under the Eighth Amendment, in addition to the Fourth and Fourteenth Amendments. However, "'Eighth Amendment scrutiny is appropriate only

of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." *Margheim v. Buljko*, 855 F.3d 1077, 1084 (10th Cir. 2017) (ellipsis original) (quoting 42 U.S.C. § 1983). "The core inquiry under any § 1983 action . . . is whether the plaintiff has alleged an actionable constitutional violation." *Becker v. Kroll*, 494 F.3d 904, 914 (10th Cir. 2007). Defendants here have asserted qualified immunity defenses, *see* Doc. 7, at 7; Doc. 13, at 6, which add an additional layer to the Section 1983 analysis. "[Q]ualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (internal quotation marks and citation omitted). "Once an individual defendant asserts qualified immunity, the plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *Margheim*, 855 F.3d at 1087 (internal quotation marks and citation omitted).[7] Thus, "qualified immunity protects all officials except those who are plainly incompetent or those who knowingly violate the law." *Apodaca v. Raemisch*, 864 F.3d 1071, 1076 (10th Cir. 2017) (internal quotation marks and citation omitted).

---

after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions. . . . [T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law." *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983) (quoting *Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977)). As Plaintiff was never adjudicated guilty or innocent, the Eighth Amendment is inapposite here.

[7] The Court has discretion to decide which of these two prongs of the qualified immunity analysis it addresses first in its consideration of whether the Plaintiff has made the requisite showing. *See Pearson v. Callahan*, 555 U.S. 223, 236–43 (2009).

Additionally, "qualified immunity questions should be resolved at the earliest possible stage of a litigation," so as "to protect public officials from the broad-ranging discovery that can be peculiarly disruptive of effective government." *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987) (internal quotation marks and citation omitted). So, while the general motion-to-dismiss standard outlined above still applies to dismissals premised on qualified immunity, this standard "may have greater bite" here in light of the "special interest" in resolving qualified immunity issues quickly and efficiently. *Robbins*, 519 F.3d at 1249.

With these principles in mind, the Court analyzes each of Plaintiff's claims, beginning with those asserted against Defendants Layden and Roll, and proceeding to those asserted against Defendants Strayer and Sharpe.

**(A)** *Claims against Defendants Layden and Roll*

Plaintiff alleges that Defendants Layden and Roll (1) illegally seized Plaintiff and searched his vehicle in violation of his Fourth Amendment rights; (2) falsely imprisoned Plaintiff in violation of his Fourth and Fourteenth Amendment rights; and (3) used excessive force against Plaintiff in violation of his Fourth and Fourteenth Amendment rights. The Court finds that Plaintiff's allegations fail to state any constitutional violation by Defendants Layden and Roll and, accordingly, DISMISSES all claims against them.

(1)     <u>Search and Seizure Claim</u>

The Fourth Amendment guarantees citizens the right "to be secure in their persons . . . against unreasonable searches and seizures . . . ." U.S. Const. amend. IV. "'[T]he ultimate touchstone of the Fourth Amendment is "reasonableness,"'" *Heien v. North*

*Carolina*, 135 S. Ct. 530, 536 (2014) (quoting *Riley v. California*, 134 S. Ct. 2473, 2482

(2014)), meaning that the Fourth Amendment protects citizens only against *unreasonable*

actions by police. *See United States v. King*, 990 F.2d 1552, 1556–57 (10th Cir. 1993).

"Reasonableness under the Fourth Amendment 'depends on a balance between the public

interest and the individual's right to personal security free from arbitrary interference by

law officers.'" *Id*. at 1559 (quoting *United States v. Brignoni-Ponce*, 422 U.S. 873, 878

(1975)). Thus, assuming that Plaintiff was seized and his vehicle searched[8] by Officers

Layden and Roll on January 10, 2016, the Court must assess whether the officers' actions

were reasonable.

Encounters may be initiated by the police "for a wide variety of purposes, some of

which are wholly unrelated to the desire to prosecute for crime." *United States v. Garner*,

416 F.3d 1208, 1212 (10th Cir. 2005) (internal quotation marks and citation omitted). At

one end of the spectrum is an arrest—"the quintessential seizure of the person," *California*

*v. Hodari D.*, 499 U.S. 621, 624 (1991)—which is reasonable only if supported by probable

cause. *Novitsky v. City of Aurora*, 491 F.3d 1244, 1253 (10th Cir. 2007). At the other end

(apart from fully consensual encounters) are brief detentions, either investigatory or non-

investigatory. *Id*. Salient here are "brief non-investigatory detention[s] in the exercise of

---

[8] "[W]hen an individual seeks to preserve something as private, and his expectation of privacy is one that society is prepared to recognize as reasonable, we have held that official intrusion into that private sphere generally qualifies as a search and requires a warrant supported by probable cause." *Carpenter v. United States*, 138 S. Ct. 2206, 2213 (2018) (internal quotation marks and citation omitted). A person is "seized" when, "taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." *United States v. Hernandez*, 847 F.3d 1257, 1263 (10th Cir. 2017) (internal quotation marks omitted) (quoting *Florida v. Bostick*, 501 U.S. 429, 437 (1991)).

[the police's] community caretaking functions." *Id.* The police's community caretaking functions are "'totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.'" *Garner*, 416 F.3d at 1212 (quoting *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973)). "[R]egardless of suspected criminal activity, when articulable facts indicate the need 'to assure the safety of the public and/or the individual,'" the police may seize a person for a brief, non-investigatory stop limited in scope and duration. *Novitsky*, 491 F.3d at 1253 (quoting *King*, 990 F.2d at 1560). As with investigatory detentions (i.e. *Terry* stops), a non-investigatory detention based on the police's community caretaking functions must "satisf[y] the two-part test set forth in *Terry v. Ohio*: (1) the detention must be justified at its inception, and (2) reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* (internal quotation marks and citation omitted); *see also Storey v. Taylor*, 696 F.3d 987, 993 (10th Cir. 2012) ("A detention under the community-caretaking exception[] must be based upon specific and articulable facts which reasonably warrant an intrusion into the individual's liberty[,] the government's interest must outweigh the individual's interest in being free from arbitrary governmental interference[, and] the detention must last no longer than is necessary to effectuate its purpose, and its scope must be carefully tailored to its underlying justification." (internal quotation marks and citation omitted)).

Here, Officers Layden and Roll reasonably exercised their community caretaking functions in approaching Plaintiff's vehicle and ordering Plaintiff to exit it. Plaintiff acknowledges in his complaint that January 9, 2016, was "so cold," which is why he wore his trench coat and rolled up the car's windows when he turned off his car. *See* Doc. 1, at

2. Plaintiff also admits that he "passed out" after parking his car. *Id*. Officers Layden and Roll approached Plaintiff's vehicle at around 3:40 a.m.; according to Plaintiff, they knocked on the car window and shouted at him. *Id*. Assuming Plaintiff was seized during these events, Defendants acted reasonably to ensure Plaintiff's safety and well-being on an admittedly cold early morning.

The facts here are analogous to a similar case from the Northern District of Oklahoma, *United States v. Peoples*. In *Peoples*, Tulsa Police Department officers, addressing a traffic violation near a Quik Trip convenience store at around 3:00 a.m., observed a vehicle parked in the Quik Trip's lot that was partially blocking traffic and far from the gas pumps. No. 13–CR–0141–CVE, 2013 WL 4521174, at *1 (N.D. Okla. Aug. 26, 2013). Seeing that the vehicle had not moved over the course of the traffic stop, the officers approached the vehicle, which was parked facing the store with the engine running; inside, they found a person who appeared to be sleeping in the driver's seat. *Id*. "[C]oncerned for the welfare of the occupant of the vehicle and for harm that could be caused by the vehicle," the officers "knock[ed] on the driver's side window" and "announced the[ir] presence," but the occupant did not awaken. *Id*. Eventually, the officers removed the occupant from the vehicle and, once the occupant awakened from this more vigorous action, noted that the occupant's breath smelled of alcohol, that he slurred his words, and that he appeared disoriented. *Id*. at *1–2. The occupant, arrested for being a felon in possession of a firearm, moved to suppress evidence found by the officers, arguing that the encounter constituted an unreasonable seizure. *Id*.

The district court denied the occupant's suppression motion, finding the officers' conduct to be reasonable as community caretaking functions. *Id*. at *2–3. The court held that the "circumstances [as] described by [the officers] could have led a reasonable police officer to believe that a limited inquiry was necessary to ensure the safety of any occupants of the vehicle and the public." *Id*. at *3.[9] Moreover, the *Peoples* court found that the officers' interests outweighed the occupant's interests, and that the officers were cautious in their approach. *Id*. Specifically, the officers "attempted to use the least intrusive means" to awaken the occupant, and when he did not awaken, they were justified in believing that he may "need[] medical attention." *Id*. Given all these facts, the officers' conduct did not violate the Fourth Amendment.[10]

As with the officers in *Peoples*, Officers Layden and Roll acted reasonably and did not violate Plaintiff's Fourth Amendment rights. Taking Plaintiff's allegations as true, reasonable officers in Layden and Roll's positions may have been concerned for Plaintiff's

---

[9] These circumstances included the vehicle's "awkward position" in the parking lot; the vehicle's running engine; and the occupant's unconscious, potentially intoxicated, state. *Peoples*, 2013 WL 4521174, at *3. According to the court, "[t]hese [were] specific and articulable facts from which a reasonable police officer could have believed that it was necessary to approach the vehicle to ensure the health and safety of the occupant of the vehicle and the general public." *Id*.

[10] The occupant-defendant in *Peoples* also argued that the officers' conduct was unlawful from the start because they "had no right even to approach the vehicle" without receiving some predicate telephone call indicating suspicious behavior or the like. *Peoples*, 2013 WL 4521174, at *3. Plaintiff here makes a similar argument, albeit one buried in otherwise-irrelevant legal conclusions. *See* Doc. 1, at 2 ("Now I know that the law says they don[']t have probable cause to approach me being that there is no record of a call . . . to force me to get out of the car would be consider[ed] as excessive force because I did not have a choice."). The *Peoples* court noted that it was "unable to find any case suggesting that police may exercise the community caretaking function only when someone has sought assistance from the police." *Id*. at *3 n.2. To that court—along with this one—"it is clear that police do not have to simply walk away when a person or the public is potentially at risk of harm." *Id*. (internal quotation marks and citation omitted); *see also Winters v. Adams*, 254 F.3d 758, 764 (8th Cir. 2001) (finding officers "'would have been derelict in their duties' had they not detained" a possibly intoxicated individual behind the wheel of a parked vehicle (citation omitted)).

safety and well-being, given the circumstances contextualizing the encounter. At 3:40 a.m. on a cold morning in the parking lot of a closed hardware store, the officers were free to approach the vehicle out of concern for any potential occupants. When the officers saw that Plaintiff was inside the car, they reasonably exercised their community caretaking functions by knocking on the window and attempting to rouse Plaintiff. And asking Plaintiff to step out of the vehicle—if they even did this[11]—was a reasonable request to ensure Plaintiff's safety and well-being.

Plaintiff also complains of an illegal search of his vehicle, but viewing his allegations as true, everything that ensued after he exited the vehicle was reasonable under the Fourth Amendment. Plaintiff notes, and does not challenge, Officers Layden and Roll's assertion that "they saw a clear baggie containing marijuana" in plain view in the vehicle. *See* Doc. 1, at 2–3. Moreover, when Plaintiff awoke, the officers testified that "[his] taste buds were raised and [he] had a green tint to [his] tongue"—indicia of recent marijuana usage, in light of the officers' experience. *Id*. at 3; *see also Foote v. Spiegel*, 118 F.3d 1416 (10th Cir. 1997) (affirming summary judgment on qualified immunity grounds for officer in action regarding a drug-related arrest premised, in part, on officer's observation of green tint to defendant's tongue). Upon these specific and articulable facts, the officers would

---

[11] Plaintiff's complaint is unclear as to whether the officers' approach toward the vehicle compelled Plaintiff of his own volition to exit the vehicle or the officers' conduct (knocking, shouting, etc.) constituted a demand that Plaintiff exit his vehicle. *See* Doc. 1, at 2.

have had probable cause[12] to arrest Plaintiff for violating state law[13] and to search Plaintiff's vehicle under the plain view and automobile exceptions to the warrant requirement.[14] Seeing no Fourth Amendment violation from Plaintiff's well-pled factual allegations, the Court dismisses this claim.

---

[12] Because of their intrusive nature, arrests are reasonable "only if supported by probable cause." *Koch v. City of Del City*, 660 F.3d 1228, 1239 (10th Cir. 2011) (internal quotation marks and citation omitted). Probable cause—an objective standard based on the totality of the circumstances—"exists where the facts and circumstances within the arresting officer's knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution to have the belief that an offense has been or is being committed by the person to be arrested." *Id*. (internal quotation marks and citations omitted). "In determining whether probable cause exists, an officer may draw inferences based on his own experience." *United States v. Jurado-Vallejo*, 380 F.3d 1235, 1238 (10th Cir. 2004) (internal quotation marks and citation omitted).

[13] Plaintiff was charged with possession of a controlled dangerous substance under 63 O.S. §§ 2-401–2-420 and actual physical control of a motor vehicle while intoxicated under 47 O.S. § 11-902(A) (1–4), in violation of Oklahoma state law. *See* Doc. 7-1, at 2–3.

[14] "The police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained." *California v. Acevedo*, 500 U.S. 565, 580 (1991); *see also United States v. Saulsberry*, 878 F.3d 946, 951 (10th Cir. 2017) ("Probable cause to search a vehicle is established if, under the totality of the circumstances, there is a fair probability that the car contains contraband or evidence." (internal quotation marks and citation omitted)). This is so even where the car is immobile and even where the police have sufficient time to first obtain a search warrant. *See United States v. Ludwig*, 10 F.3d 1523, 1528 (10th Cir. 1993). Under the plain view doctrine, "[a] police officer may properly seize evidence of a crime without a warrant if: (1) the officer was lawfully in a position from which to view the object seized in plain view; (2) the object's incriminating character was immediately apparent—i.e., the officer had probable cause to believe the object was contraband or evidence of a crime; and (3) the officer had a lawful right of access to the object itself." *United States v. Carey*, 172 F.3d 1268, 1272 (10th Cir. 1999) (internal quotation marks and citation omitted). These two exceptions may work in tandem to justify a warrantless automobile search: "if an officer has lawfully observed an object of incriminating character in plain view in a vehicle, that observation, either alone or in combination with additional facts, has been held sufficient to allow the officer to conduct a probable cause search of the vehicle." *United States v. Sparks*, 291 F.3d 683, 690–91 (10th Cir. 2002) (collecting cases and upholding vehicle search in part because officers had observed small plastic bags on the vehicle's front seat). Here, Officers Layden and Roll were justified as community caretakers in asking Plaintiff to exit his vehicle. Once Plaintiff complied, the officers developed probable cause to search Plaintiff's vehicle (and arrest Plaintiff) based on their observations of Plaintiff himself (raised taste buds, green tongue, etc.) *and* their observation of a small baggie containing marijuana in plain view in the vehicle.

(2)    False Imprisonment Claims

Plaintiff also asserts claims for false imprisonment under the Fourth and Fourteenth Amendments. However, any such claims fail Rule 12(b)(6)'s standard and are, therefore, dismissed.

The Tenth Circuit, in *Mondragon v. Thompson*, summarized the varying avenues by which a plaintiff may bring a claim of unconstitutional imprisonment:

> We have held that a plaintiff who claims that the government has unconstitutionally imprisoned him has at least two potential constitutional claims. The initial seizure is governed by the Fourth Amendment, but at some point after arrest, and certainly by the time of trial, constitutional analysis shifts to the [Fourteenth Amendment] Due Process Clause. If he has been imprisoned without legal process he has a claim under the Fourth Amendment analogous to a tort claim for false arrest or false imprisonment. If he has been imprisoned pursuant to legal but wrongful process, he has a claim under the procedural component of the Fourteenth Amendment's Due Process Clause analogous to a tort claim for malicious prosecution.

519 F.3d 1078, 1082 (10th Cir. 2008). Under Oklahoma law, "[t]he tort of false imprisonment is the unlawful detention of a person against his will." *Duran v. Muse*, No. 16–CV–717–TCK–JFJ, 2017 WL 5985568, at *6 (N.D. Okla. Dec. 1, 2017) (citing *Walters v. J.C. Penney Co., Inc.*, 2003 OK 100, ¶ 9, 82 P.3d 578, 583). As the Court has stated above, Plaintiff fails to state a claim that he was unlawfully arrested or detained. Accordingly, any claim for false imprisonment under the Fourth Amendment is dismissed.

As to any claim arising after Plaintiff was bound over for trial—that is, a claim for malicious prosecution under the Fourteenth Amendment—this, too, would fail. "[A] § 1983 malicious prosecution claim includes the following elements: (1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action

terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages." *Sanchez v. Hartley*, 810 F.3d 750, 754 n.1 (10th Cir. 2016) (internal quotation marks omitted) (quoting *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008)). While Plaintiff arguably shows none of these elements, fatal to his claims is Plaintiff's failure to demonstrate lack of probable cause. The Court has found that Plaintiff's original arrest was supported by probable cause—as was the remainder of Plaintiff's confinement and prosecution. Because Plaintiff has failed to plead sufficient facts to make out claims for malicious prosecution or false imprisonment, the Court dismisses these claims.[15]

---

[15] Two additional points are worth mentioning. First, to the extent that Plaintiff asserts a claim for malicious prosecution under the *Fourth* Amendment, this claim too is dismissed, as it also requires Plaintiff to show a lack of probable cause, which he has failed to do. The Tenth Circuit has recognized that plaintiffs may bring malicious prosecution claims under both the Fourth and Fourteenth Amendments. *See Sanchez v. Hartley*, 810 F.3d 750, 754–55 (10th Cir. 2016). A Fourth Amendment malicious prosecution claim may be brought to "challenge the probable cause determination made during the constitutionally-required probable cause hearing." *Wilkins v. DeReyes*, 528 F.3d 790, 798–99 (10th Cir. 2008); *see also Margheim v. Buljko*, 855 F.3d 1077, 1085 (10th Cir. 2017) ("'Unreasonable seizures imposed *without* legal process precipitate Fourth Amendment false imprisonment claims. Unreasonable seizures imposed *with* legal process precipitate Fourth Amendment malicious-prosecution claims.'" (emphasis original) (quoting *Myers v. Koopman*, 738 F.3d 1190, 1194 (10th Cir. 2013))). The elements of malicious prosecution, either under the Fourth Amendment or the Fourteenth Amendment, are the same. *Margheim*, 855 F.3d at 1085. It would appear from his complaint that Plaintiff challenges the probable cause determination made by Oklahoma state judge Lisa Hammond. *See* Doc. 1, at 3 ("Just because a judge bounds (sic) a case over for trial does not constitute[] a finding that there was probable cause . . . ."); Doc. 7-1, at 4 (noting preliminary hearing on August 22, 2016, as cited in Plaintiff's complaint). But just as Plaintiff failed to show a lack of probable cause for his arrest, he similarly fails to show a lack of probable cause for his continued confinement or call into question the state court's finding of probable cause. Thus, Plaintiff's malicious prosecution claims, under the Fourth and Fourteenth Amendments, are dismissed.

Second, Plaintiff's Fourteenth Amendment malicious prosecution claim likely also fails because Oklahoma law offers an adequate state remedy. *See Koopman*, 738 F.3d at 1193 ("If a state actor's harmful conduct is unauthorized and thus could not be anticipated pre-deprivation, then an adequate post-deprivation remedy—such as a state tort claim—will satisfy due process."); *Barrow v. Oklahoma ex rel. Dep't of Pub. Safety*, No. 16–CV–0667–CVE–TLW, 2017 WL 3033128, at *5 (N.D. Okla. July 17, 2017) ("To prevail on a [state law] claim of malicious prosecution, plaintiff must prove the following five elements: '(1) the defendant's institution of the former action; (2) its termination in the plaintiff's favor; (3)

(3)   Excessive Force Claim

Plaintiff also brings an excessive force claim, appropriately analyzed as a Fourth Amendment claim (notwithstanding any assertions by Plaintiff to the contrary).[16] "In order to recover on an excessive force claim, a plaintiff must show: (1) that the officers used greater force than would have been reasonably necessary to effect a lawful seizure, and (2) some actual injury caused by the unreasonable seizure that is not de minimis, be it physical or emotional." *Cortez v. McCauley*, 478 F.3d 1108, 1129 n.25 (10th Cir. 2007) (*en banc*);

---

the defendant's want of probable cause for pressing the former suit against the plaintiff; (4) the presence of malice in the defendant's conduct; and (5) damages.'" (quoting *Reeves v. Agee*, 769 P.2d 745, 752 (Okla. 1989))). However, no parties have raised this argument, and the Court dismisses Plaintiff's Fourteenth Amendment theory, to the extent he offers one, based on the existence of probable cause. *See Williams v. City of Tulsa*, No. 11-CV-469-TCK-FHM, 2016 WL 1572957, at *7 n.3 (N.D. Okla. Apr. 19, 2016).

[16] Plaintiff's excessive force allegations consist of the officers approaching his car and compelling Plaintiff, via knocks and shouts, to exit the vehicle. *See* Doc. 1, at 2–3, 5, 7. Effectively, Plaintiff argues that the officers had no reason to approach the vehicle (i.e. no probable cause), so their actions—both approaching the vehicle and everything thereafter—constitute excessive force. This claim, then, took place prior to—at most, up to the point of—Plaintiff's arrest. Consequently, the Fourth Amendment governs Plaintiff's excessive force claim as to Defendants Layden and Roll. The Tenth Circuit has succinctly outlined when and how excessive force claims may be brought:

> Excessive force claims can be maintained under the Fourth, Fifth, Eighth, or Fourteenth Amendment . . . . Determining which amendment applies to an allegation of excessive force requires consideration of where the plaintiff finds himself in the criminal justice system. Any force used leading up to and including an arrest may be actionable under the Fourth Amendment's prohibition against unreasonable seizures. By contrast, claims of excessive force involving convicted prisoners arise under the Eighth Amendment. And when neither the Fourth nor Eighth Amendment applies—when the plaintiff finds himself in the criminal justice system somewhere between the two stools of an initial seizure and post-conviction punishment—we turn to the due process clauses of the Fifth or Fourteenth Amendment and their protection against arbitrary governmental action by federal or state authorities. It is therefore well-established that the Fourteenth Amendment governs any claim of excessive force brought by a pretrial detainee—one who has had a judicial determination of probable cause as a prerequisite to the extended restraint of his liberty following arrest. . . . On the other hand, we have held that the Fourth Amendment, not the Fourteenth, governs excessive force claims arising from treatment of an arrestee detained without a warrant and prior to any probable cause hearing.

*Estate of Booker v. Gomez*, 745 F.3d 405, 418–19 (10th Cir. 2014) (internal quotation marks, citations, alterations, and emphases omitted). As all of Plaintiff's allegations regarding excessive force concern actions "leading up to and including an arrest," the Fourth Amendment governs. *Id.*

*see also Koch v. City of Del City*, 660 F.3d 1228, 1246 (10th Cir. 2011) (listing "three non-exhaustive factors for determining whether the use of force in a particular case [is] reasonable: (1) 'the severity of the crime at issue,' (2) 'whether the suspect poses an immediate threat to the safety of the officers or others,' and (3) 'whether he is actively resisting arrest or attempting to evade arrest by flight.'" (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989))).

Plaintiff's excessive force claim substantively consists of the following allegation: because Officers Layden and Roll had no probable cause (or reason at all) to approach Plaintiff's vehicle, their actions in awakening Plaintiff and "forc[ing]" him to get out of his vehicle constitute excessive force. Aside from being, if not primarily, then wholly, a legal conclusion, Plaintiff alleges no *force* at all.[17] Regardless, Officers Layden and Roll's conduct was objectively reasonable—by Plaintiff's account, the officers were able to effectuate a brief, non-investigatory seizure followed by an arrest with little to no force at all. Thus, Plaintiff's excessive force claim is meritless, and the Court dismisses it.

**(B)** ***Claims against Defendants Strayer and Sharpe***

Plaintiff asserts excessive force and false imprisonment claims under the Fourth and Fourteenth Amendments against Defendants Strayer and Sharpe. As with Defendants Layden and Roll, the Court finds that Plaintiff fails to establish that Defendants Strayer and Sharpe violated any of Plaintiff's constitutional rights. Accordingly, the Court DISMISSES all claims against them.

---

[17] Indeed, whether Plaintiff was compelled to exit the vehicle in the first place is unclear. *See supra* note 11.

(1)    Defendant Sharpe

Claims against Officer Sharpe are easily dispensed with. Plaintiff alleges no facts linking Officer Sharpe to any potential constitutional violations. Indeed, Plaintiff's allegations pertaining to Officer Sharpe consist entirely of the following: "Plaintiff was subjected to excessive use of force by . . . William Sharpe" and "Plaintiff was subjected to false imprisonment by . . . William Sharpe." Doc. 1, at 7. Along with being legal conclusions the Court may rightly disregard, Plaintiff's allegations naming Officer Sharpe fail to show "an affirmative link between the defendant's conduct and any constitutional violation." *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1156 (10th Cir. 2001) (internal quotation marks and citations omitted); *see also Robertson v. Las Animas Cty. Sheriff's Dep't*, 500 F.3d 1185, 1193 (10th Cir. 2007) ("It is axiomatic that, to prevail on a damages claim for a constitutional violation pursuant to § 1983, the plaintiff must show that the defendant, acting under color of state law, personally participated in the alleged violation." (internal quotation marks and citation omitted)); *Foote*, 118 F.3d at 1423–24 ("Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation."). As Officer Sharpe appears nowhere in Plaintiff's factual narrative purportedly forming the substance of his claims, *see* Doc. 1, at 2–4, Plaintiff's claims against Officer Sharpe are dismissed.

(2)    Defendant Strayer

Officer Strayer is not quite the supernumerary that Officer Sharpe is, but he, too, is a bit player in Plaintiff's overall narrative. According to the complaint, Officer Strayer appears after the main events of January 30, 2016, undergirding Plaintiff's excessive force

and false imprisonment claims. Specifically, Plaintiff notes that "Matthew Strayer . . . was not . . . the arresting officer[]," but rather arrived on scene after Plaintiff was already detained in the back of another vehicle (presumably, another squad car). Doc. 1, at 4. Officer Strayer then "transport[ed] [Plaintiff] to the county jail" and later testified at Plaintiff's preliminary hearing on November 21, 2016. *Id.*; Doc. 13-1, at 2; Doc. 13-2.

As to Plaintiff's excessive force claim, these scant allegations—supplemented only by legal conclusions—are insufficient to state a claim against Officer Strayer. Critically, Plaintiff says nothing about what force, if any, Officer Strayer utilized. Instead, as with his claims against Officers Layden and Roll, Plaintiff argues that Officer Strayer (along with other officers) subjected him to excessive force by pulling over his car without probable cause. Doc. 1, at 7. Aside from this theory constituting a legal conclusion the Court need not credit, Officer Strayer, by Plaintiff's own allegations, was not involved in Plaintiff being pulled over. *See id*. at 3–4. Officer Strayer does not enter the scene, in fact, until after Plaintiff has been pulled over, questioned, and detained. *See id*. Thus, Plaintiff's excessive force claim against Officer Strayer is without merit, as he alleges no personal involvement by Officer Strayer in any alleged unconstitutional actions.

This leaves Plaintiff's false imprisonment claim against Officer Strayer. While Plaintiff titles this claim as "false imprisonment," he also seems to assert a claim for malicious prosecution. *See* Doc. 1, at 4 (citing malicious prosecution case law). Regardless of which specific claim Plaintiff brings, though, he fails to show a lack of probable cause or an unlawful detention—just as he failed to do with Officers Layden and Roll. Plaintiff *asserts* a lack of probable cause, to be sure—but naked assertions are neither well-pled

facts nor legal arguments that this Court may credit in the face of a motion to dismiss.[18] Accordingly, the Court DISMISSES Plaintiff's claims against Officer Strayer.[19]

## IV.  **Conclusion**

Plaintiff's complaint offers a plethora of legal conclusions only marginally supplemented by well-pled factual content. But "naked assertions devoid of further factual enhancement" are insufficient to survive the Defendants' motions to dismiss. *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted); *see also id*. at 678–79 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."); *Papasan v. Allain*, 478 U.S. 265, 286 (1986), *quoted in Twombly*, 550 U.S. at 555 ("[W]e are not bound to accept as true a legal conclusion couched as a factual allegation."); *Erickson v. Pawnee Cty. Bd. of Cty. Comm'rs*, 263 F.3d 1151, 1154 (10th Cir. 2001) ("Plaintiff's conclusory allegation is insufficient to survive defendants' motions to dismiss."); *Bellmon*, 935 F.3d at 1110 ("[C]onclusory allegations without supporting factual averments are insufficient to state a

---

[18] To the extent Plaintiff is arguing that Officer Strayer's conduct was somehow improper because he was not the arresting officer and relied on a third-party's account of probable cause, this argument is unavailing because Officer Strayer was entitled to rely on the statements of the arresting officers. *See Foote v. Spiegel*, 118 F.3d 1416, 1424 (10th Cir. 1997) ("Officers may rely on information furnished by other law enforcement officials to establish reasonable suspicion and probable cause for an arrest.").

[19] In their motion to dismiss, Defendants Strayer and Sharpe assert that any state law claims raised by Plaintiff are barred by Oklahoma's Governmental Tort Claims Act. *See* Doc. 13, at 17–19. Even liberally construing the complaint, the Court cannot cobble together a well-pled state law claim—and, even if Plaintiff pled sufficient, disparate factual material to piece together such a claim, the Court will not act as Plaintiff's advocate to do so.

claim on which relief can be based."). Accordingly, the Court DISMISSES Plaintiff's complaint in its entirety.

IT IS SO ORDERED this 6th day of December 2018.

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE